# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-3549

_____

United States of America

*Plaintiff - Appellee*

v.

Joshua Stewart Myatt

*Defendant - Appellant*

_____

No. 22-3553

_____

United States of America

*Plaintiff - Appellee*

v.

Rodney Jiminez

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: September 18, 2023
Filed: October 17, 2023
[Unpublished]

_____

Before LOKEN, WOLLMAN, and BENTON, Circuit Judges.
_____

PER CURIAM.

Joshua Stewart Myatt and Rodney Jiminez pleaded guilty to one count of conspiracy to distribute fifty grams or more of methamphetamine and five hundred grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The district court sentenced Myatt to 300 months' imprisonment and Jiminez to 216 months' imprisonment, both sentences representing downward variances from the advisory U.S. Sentencing Guidelines ranges. Jiminez and Myatt appeal, arguing that the district court erred in determining their roles in the offense. Myatt also argues that his sentence is substantively unreasonable. We affirm.

The United States Postal Service intercepted two packages in September 2021 that were sent to Myatt at an address in Morrison, Illinois. Each contained almost a kilogram of ice methamphetamine. A third package was intercepted in January 2022. It contained 1,376 grams of ice methamphetamine and was sent to an address in Sterling, Illinois, that was associated with Jiminez. After a law enforcement officer delivered the package, Jiminez arrived in a vehicle, parked in a neighboring driveway, and retrieved the package from the front porch. He was thereafter arrested.

Jiminez told officers that he had received the package on behalf of Myatt, who was waiting in Sterling to pick up the drugs. Jiminez arranged to meet Myatt at a gas station, where officers arrested him.

Myatt told officers that he received drug shipments from his supplier through the mail, with the packages typically containing between two and four pounds of ice methamphetamine. After two packages had not been delivered, Myatt asked Jiminez if he would receive the packages. Jiminez agreed to do so, receiving as many as

seventeen packages on behalf of Myatt over the course of four months. Myatt typically compensated Jiminez with an ounce of methamphetamine.

At Myatt's sentencing, the district court increased his base offense level by 4 after determining that he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." See U.S.S.G. § 3B1.1(a). The parties had resolved Myatt's factual objections to the presentence report, and the district court relied upon its revised factual recitation. At Jiminez's sentencing, the district court denied his request for an offense-level reduction for being a minor or minimal participant. See U.S.S.G. § 3B1.2. Myatt and Jiminez argue that these role-in-the-offense determinations are erroneous. "We review the district court's factual findings regarding the applicability of guidelines enhancements and reductions for clear error, and we review its interpretation of the guidelines *de novo*." United States v. Armstrong, 60 F.4th 1151, 1166 (8th Cir. 2023).

Myatt contends that the district court erred when it applied the organizer or leader enhancement under Guidelines § 3B1.1(a). He contends that he was a mere "cog in the line" who took direction from others, asserting that he was not involved in any high-level planning and that he did not recruit participants to the conspiracy. Myatt's Br. 11. Myatt does not dispute the court's finding that the conspiracy involved five or more participants.

We conclude that the district court did not err in applying the enhancement. According to the revised presentence report, after Jiminez agreed to receive packages, Myatt told Jiminez of the expected delivery date and notified Jiminez of delivery. Jiminez then retrieved the package and delivered it to Myatt, who compensated him. Myatt thereafter distributed the drug to his customers in Clinton, Davenport, and Muscatine, Iowa, and sent the cash proceeds via mail or wire to his supplier in Arizona. According to one customer, Myatt set the purchase price and allowed her to pay half upon delivery and the remainder at the next delivery. Myatt thus coordinated with the out-of-state supplier, directed Jiminez's activities, delivered to

lower-level distributors in river towns in Iowa, set the purchase price, and allowed the distributors to buy on credit. As the district court noted, the Guidelines do not require the defendant to be the organizer or leader of the entire operation for the enhancement to apply. U.S.S.G. § 3B1.1 cmt. n. 4 ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy."); see United States v. Bahena, 223 F.3d 797, 804 (8th Cir. 2000) ("[A] defendant need be only 'an' organizer or leader. He does not have to be 'the' organizer or leader."). The record supports the district court's determination that Myatt organized and led the criminal activity in Iowa. See, e.g., Bahena, 223 F.3d at 804–05 (holding that the district court did not err in characterizing defendant as a leader or organizer because he "was more than a mere distributor" and he "actively promoted the shipments from California and led or organized at least his two family members").

The record likewise supports the finding that Jiminez was an average participant and thus not entitled to a mitigating-role reduction under Guidelines § 3B1.2. Although he claims that his only role in the conspiracy was to be "a mailing site for illegal drugs," Jiminez's Br. 17, his presentence report indicates greater involvement. Jiminez was involved in the conspiracy for four months, accepted as many as seventeen packages on behalf of Myatt, knew or believed that those packages contained methamphetamine, and delivered the packages to Myatt in exchange for compensation. Each package contained between two and four pounds of methamphetamine. "We have repeatedly found no clear error in the denial of a minor-role reduction on similar facts." United States v. Ramirez-Maldonado, 928 F.3d 702, 708–09 (8th Cir. 2019); see, e.g., id. at 708 (defendant was involved for the conspiracy for at least three months and delivered cocaine on at least one occasion); United States v. Almazan, 552 F. App'x 610, 611 (8th Cir. 2014) (per curiam) (defendant knowingly transported cocaine in a secret compartment and anticipated receiving $1,000 as compensation).

Myatt also challenges the substantive reasonableness of his sentence, which we review for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007).

Myatt argues that the district court failed to give adequate weight to the fact that his substance abuse issues led to his criminal activity. See United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (district court abuses its discretion when it commits a clear error of judgment in weighing sentencing factors). We find no clear error of judgment in the district court's decision to weigh Myatt's drug addiction and need for treatment against the seriousness of the offense, the need to protect the public, and the need for deterrence in light of "the volume of methamphetamine involved in the offense, the sophistication of the distribution and the willingness to continue the distribution of this quantity of methamphetamine despite apparent investigation by law enforcement." Myatt's Sentencing Tr. 33; see United States v. Brown, 992 F.3d 665, 673 (8th Cir. 2021) ("[Defendant's] assertion of substantive unreasonableness amounts to nothing more than a disagreement with how the district court chose to weigh the § 3553(a) factors in fashioning his sentence."); United States v. King, 898 F.3d 797, 810 (8th Cir. 2018) ("The district court's decision not to weigh mitigating factors as heavily as [the defendant] would have preferred does not justify reversal." (cleaned up)). Moreover, "[w]hen a district court varies downward and sentences below a presumptively reasonable Guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." United States v. Webb, 70 F.4th 1038, 1046 (8th Cir. 2023) (citation omitted). Myatt's sentence is not substantively unreasonable.

The judgments are affirmed.

_____